United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MOBILE-PLAN-IT LLC,
Plaintiff,

v.

FACEBOOK INC.,
Defendant.

Case No. 14-cv-01709-RS

**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS**

I. INTRODUCTION

In this patent infringement action, defendant Facebook, Inc. seeks judgment on the pleadings that the patent-in-suit discloses only "abstract ideas" outside the permissible scope of patent protection, and is therefore invalid under 35 U.S.C. § 101. Although the question is close, the motion will be denied.

II. BACKGROUND

Plaintiff Mobile-Plan-It, LLC ("MPI") alleges that Facebook infringes one independent claim, and numerous dependent claims of U.S. Patent No. 8,312,091 ("'091 patent"). The '091 patent is entitled "Methods and Systems for Organizing Meetings." Independent claim 1 describes a method for organizing a meeting in a physical meeting location using a computer program. While Facebook therefore characterizes the invention as relating to "organizing a meeting," MPI insists the gravamen of the invention lies in "'proxy' communication between meeting attendees

using a wireless communication device." The claim provides:

> A method for organizing a meeting occurring at a physical meeting location, using software executing on a computer system, the method comprising:
>
> > storing meeting information associated with the meeting, the meeting information including a database listing the physical meeting location and attendees of the meeting, the attendees registered to attend the meeting at the physical meeting location and including a first attendee and a second attendee;
> >
> > associating first and second ones of the attendees with respective first and second primary electronic addresses;
> >
> > assigning a first personal proxy to the first one of the attendees and a second personal proxy to the second one of the attendees, the first personal proxy having a first personal proxy mailbox and first personal storage space and the second personal proxy having a second personal proxy mailbox and second personal storage space;
> >
> > wherein the first and second personal proxy mailboxes allow the first and second ones of the attendees to send messages to one another and to receive messages from one another without divulging their respective first and second primary electronic addresses;
> >
> > communicating with a first wireless device of the first attendee and a second wireless device of the second attendee to convey updated meeting information, the updated meeting information including an updated attendee list;
> >
> > receiving, from the first attendee, a message directed to the second personal proxy mailbox; and
> >
> > directing the message to the second attendee using the second primary electronic address.

Although the various dependent claims allegedly infringed add further limitations, MPI does not offer any contention that such limitations would give rise to patentability even if Claim 1 fails. This motion stands or falls, therefore, on whether Claim 1 satisfies 35 U.S.C. § 101.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for



United States District Court
Northern District of California

United States District Court
Northern District of California

judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, [a] party is entitled to judgment as a matter of law." *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011) (quoting *Dunlap v. Credit Protection Ass'n, L.P.,* 419 F.3d 1011, 1012 n.1 (9th Cir. 2005)); *see also Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004) (explaining that all material allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party).

IV. DISCUSSION

Section 101 of the Patent Act defines the subject matter eligible for patent protection. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. Facebook contends the '091 patent fails to qualify under this section.

The Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), provides the relevant analytical framework for this motion. As explained in *Alice*, the Court has "interpreted § 101 and its predecessors . . . for more than 150 years" to "'contain[] an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable.'" *Alice*, 134 S. Ct. at 2354, quoting *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) (further internal quotation marks and brackets omitted).

The *Alice* court then applied a two-step framework for determining patent eligibility, previously articulated in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012):

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider

> the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an "inventive concept" – i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.

*Alice*, 134 S. Ct. at 2355.

As noted, Facebook's contention here is that the patent is drawn only to abstract ideas. *Alice* explained, "The 'abstract ideas' category embodies "the longstanding rule that '[a]n idea of itself is not patentable.' " *Id*. at 2355; *see also Le Roy v. Tatham*, 14 How. 156, 175, 14 L.Ed. 367 (1853). ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right").

*Alice* repeated the caution given in *Mayo*, however, that the exclusion for "abstract ideas" must not be applied too broadly: "[W]e tread carefully in construing this exclusionary principle lest it swallow all of patent law." 134 S. Ct. at 2354 (citing *Mayo*, 132 S.Ct., at 1293–1294.) At some level, "all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 132 S.Ct., at 1293.

On the facts before it, the *Alice* court also expressly declined to "labor to delimit the precise contours of the 'abstract ideas' category." 134 S. Ct. at 2357. Instead, it merely found that the concept of providing an "intermediated settlement" was not meaningfully distinguishable from the idea of "risk hedging" at issue in *Bilski v. Kappos*, 561 U.S. 593 (2010). In both instances, the idea involved was "a fundamental economic practice long prevalent in our system of commerce." *Id*. at 2356. The question, therefore, is whether the patent here similarly is directed only at abstract ideas, and if so, whether there is any "something more" claimed that would render it valid anyway.

Focusing on the preamble of Claim 1, Facebook argues this patent neatly fits the *Alice* framework—and fails thereunder. Facebook contends the first half of the preamble corresponds with first step of *Alice*, and shows the claim is directed to the abstract idea of "organizing a meeting, occurring at a physical meeting location[.]" Then, Facebook says, the latter half of the

United States District Court
Northern District of California

preamble—"using software executing on a computer system," corresponds with second step of *Alice*. In Facebook's view, the preamble only recites a generic computer implementation, which the Supreme Court held was not sufficient to supply an "inventive concept" constituting "something significantly more" than the abstract idea. *Alice Corp.*, 134 S. Ct. at 2355-60.

MPI contends Facebook's characterization of the patent is oversimplified and its focus on the preamble is misleading. MPI argues the claim clearly seeks to solve a "technical" problem of enabling meeting attendees "to send messages to one another and to receive messages from one another without divulging their respective first and second primary electronic addresses." See '091 patent, Col. 10:40-43. MPI points to the specification:

> In the example of FIG. 1, each attendee has a "real identity" as well as a "personal proxy." The personal proxy is maintained on the organizer's computer system. The personal proxy 119 for attendee #1 in the example in FIG. 1 is a mailbox and storage space identified as "JENS@COMDEX.COM". This "JENS@COMDEX.COM" mailbox and storage area is a "proxy" in the sense that it, at least to some degree, allows attendee #1 to receive information and communicate with others at the conference without divulging the real identity 120 of attendee #1 ("JENS@OPENGRID.COM") to others at the conference. In this example, JENS@OPENGRID.COM is the primary business email address of attendee #1. Attendee #1 does not want others at the conference to be able to send attendee #1 unwanted advertisements and solicitations to the attendee's primary email address because such voluminous solicitations would obscure more important communications attendee #1 might receive via JENS@OPENGRID.COM.

*Id.*, Col. 4:15-32.

Although MPI focuses primarily on the idea of a "proxy mailbox" to support patentability, it also suggests that further "inventive concepts" lie in the notion of "communicating with a first wireless device of the first attendee and a second wireless device of the second attendee to convey updated meeting information." MPI suggests that the patent, which predated current "smart phone" technology, claimed a software system, by which conference attendees could transform their existing wireless devices, which the specification identifies as "personal digital assistant (PDA) devices" and "wireless-application-protocol (WAP) telephone[s]," *see id.*, Col. 2:61-63,

into smart phones.

In response, Facebook argues that neither the use of "proxies" nor the transmission of information to and from wireless devices saves the claim from invalidity under Section 101. Indeed, MPI has not explained how the claim teaches using then-existing wireless technologies in any inventive manner. MPI's reliance on the concept of proxy mailboxes, however, fares better. As MPI points out, the particular problem of avoiding disclosure of one's primary email address while permitting electronic communications among conference attendees is one that arises in a specific technological context.

Facebook nevertheless insists that the idea of using temporary mailboxes to preserve anonymity is abstract and well-known, pointing to the fact that newspapers once offered a similar system—without electronic technology—to permit responses to personal ads. Thus, Facebook reasons, merely implementing the same idea through generic computer software is not patentable. While the concept of anonymous mailboxes for responses to personal ads is certainly similar, both the nature of the problem being addressed, and the solution, offered by the patent relate to specific features of electronic communication.

Facebook also relies heavily on *Walker Digital, LLC v. Google, Inc.*, 2014 WL 4365245 (D. Del. Sept. 3, 2014). There, a method was claimed "for operating a computer system to facilitate an exchange of identities between two anonymous parties." *Id.* at *4. While the claims were not limited to a particular context, the specification disclosed that in prior art, "headhunters" were sometimes engaged to match companies and persons seeking employment, and "matchmakers" were sometimes used in social dating contexts. *Id.*

The *Walker* court granted summary judgment of invalidity, finding that the "methods and systems" were "directed to abstract ideas and did not contain any limitations meaningfully distinguishing the claims from the prior art practice of headhunters and matchmakers." *Id.* at 5. The decision in *Walker* is cogent and compelling on the facts before it. As the court explained, however, the problem being addressed plainly existed prior to and apart from any technological solution offered. The patentee was unable to point to any aspect of the patent claims that could

not be, and had not been, routinely performed by human beings in the employment placement and other contexts—steps "performed entirely in the human mind." *See id.* at *9

In the present case, while the question is close, MPI has offered at least an argument that its patent offers more than a list of steps human beings were routinely carrying out long before the patent existed. Although conceptually similar "proxies" may have been employed for anonymous communication purposes in a variety of other historical contexts, the specific problem purportedly addressed by the'091 patent relates to characteristics of email communications, and to particular issues arising among conference attendees. The patent does not merely teach using generic computer programming to address a pre-existing need for anonymous communications in other situations. Whether this argument for the existence of an inventive concept will ultimately be sufficient, particularly on a fully-developed record, remains to be seen. In light of the caution of the *Alice* court not to apply the "abstract idea" limitation on patentability too broadly, however, the present motion must be denied.[1]

## V. CONCLUSION

Facebook's motion for judgment on the pleadings is denied.

**IT IS SO ORDERED**.

Dated: April 20, 2015

RICHARD SEEBORG
United States District Judge

[1] Whether the patent meets other validity requirements, such as non-obviousness, also remains to be decided.